PACIFIC IRON & METAL CO. ET AL. *v.* UNITED STATES (No. 2937)[1]

[1] T. D. 42605.

United States Court of Customs Appeals, January 23, 1928

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham*, special attorney, of counsel), for the United States.

[Oral argument December 6, 1927, by Mr. Higginbotham]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

Merchandise, described in the invoices and consumption entries as "wiping rags," and bought and sold and known in the trade and commerce of the United States as "wiping rags," or as "wipers" (such trade terms being used interchangeably), was assessed for duty by the collector at the port of Seattle at 10 per centum ad valorem under paragraph 1457 of the Tariff Act of 1922, which reads:

PAR. 1457. Waste, not specially provided for, 10 per centum ad valorem.

The importer claimed in its protest that the merchandise was free of duty under paragraph 1651, 1516, 1601, or 1560, or dutiable at 10 per centum or, alternatively, at 20 per centum ad valorem under paragraph 1459. These paragraphs read respectively as follows:

PAR. 1651. Rag pulp; paper stock, crude, of every description, including all grasses, fibers, *rags*, waste, including jute, hemp and flax waste, shavings, clippings, old paper, rope ends, waste rope, and waste bagging, and all other waste not specially provided for, including old gunny cloth, and old gunny bags, *used chiefly for paper making*, and no longer suitable for bags. (Italics not quoted.)

PAR. 1516. Waste bagging, and waste sugar sack cloth.

PAR. 1601. Junk, old.

PAR. 1560. Cotton and cotton waste.

PAR. 1459. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The collector described the merchandise as follows:

DESCRIPTION OF MERCHANDISE AND ASSESSMENT

Rags: These rags were selected and laundered with all foreign matter removed. Their use was for machinery wipers, and they are known in the trade as wiping rags. Classified at 10%, paragraph 1457 of the tariff act of 1922.

On the trial in the court below the importer called as a witness Julius Glant, who testified in substance: That he was the owner of the Pacific Iron & Metal Co., the importer of the merchandise; that his company was engaged in the junk business; and that the involved merchandise consisted of white and colored "wiping rags" or "wipers," bought and sold and known in the trade as "wiping rags" or "wipers" (those terms being used interchangeably). With reference to their use, he said: "They are used for wiping machinery or automobiles, or *anywhere where there is machinery, where there is oil,* they are used for wiping purposes." (Italics not quoted.) They do not require further processing after importation to put them into condition for their intended use. In this connection he said:

A. The shipments as they come in are not proper for the retail trade or consumer.

Q. Why not?—A. In the first place, the *packages that they come in;* very few consumers buy that quantity at one time. They come in unprepared, *in the way that they are not put up in the proper packages.* When they are retailed they are burlaped; also, on *account of the smaller pieces,* in *that they are not suitable for wiping rags.*

\* \* \* \* \* \* \*

Q. Now, you spoke of the smaller pieces being used for a different purpose than the larger pieces; is that your understanding of it?—A. What I said was, that the smaller pieces of rags are used for roofing rag purposes. A piece that is too small to be used as a wiping rag becomes a roofing rag, or it might be that it would go into some paper-making stock, depending on what kind of rag it is.

Q. Well, speaking of the smaller rags, which are included in a separate exhibit, do you say those are not suitable for certain wiping purposes?—A. True, for they are too small.

Q. Well, when you refer to "too small," what do you mean?—A. People who buy wipers wouldn't take it.

Q. And will you take up any definite merchantable sizes, what you call too small or too large?—A. It is a matter of judgment a good deal; I don't know that there is any particular size that governs. It must be a reasonably large piece, a large enough piece so that it may become a wiping rag.

Q. Well, that is just the difficulty that I have from your answer, as to what is a reasonably large piece.—A. Well, produce some of the samples.

Q. You have included in one package those that you call small sizes. You mean to say they are not used as wiping rags?—A. Well, on some of them, the colors might not be good enough, because they are too dirty; also, they would have to be re-treated.

Q. Well, do you re-treat them and put them in a different condition before you import them?—A. No, I do not. I do retail a very small quantity, and those I do go over and throw out some of the pieces that we consider are too small for that purpose.

\* \* \* \* \* \* \*

Q. Well, when you speak of the dirty ones, what do you have reference to—the white or colored?—A. Well, the colored.

Q. Would you say that none of the smaller sizes would be usable as wipers in the whites?—A. No I wouldn't say none of them. *If a man wants to use them, he can use a piece three inches square as a wiping rag, but to be reasonably large as a wiping rag, it wouldn't.* (Italics not quoted.)

He also testified that, while he had not examined the rags in the shipments in question, he had examined others substantially like them, and that from 10 to 20 per centum of such rags were too small for wiping rags; and that he sold 90 to 95 per centum of those imported to jobbers in the packages or bales in which they were imported as "wiping rags" without reference to, or deduction in price for, the small rags contained therein. With regard to the processing of the rags prior to their importation, he said:

Q. Now, speaking of those white ones; speaking of all the merchandise here as represented by these exhibits, they have all been gone over by the shipper to you, to remove any metal or buckles or anything of that kind?—A. Yes, apparently; because they are free of those things.

Certain samples of rags taken from other importations were introduced in evidence as illustrative of the rags in question.

G. W. Nelson testified for the importers. It appears from his testimony that he is the president and general manager of the American Foreign Corporation; that his company had imported rags "substantially" like those represented by illustrative Exhibits 1 to 4, inclusive; and that the rags imported by his company come in bales containing both large and small rags, some of which are smaller than those in the illustrative exhibits. He stated that his company sold imported rags to jobbers and also to the junk trade; that the junk dealers "re-sort them and re-grade them"; and that sometimes the rags are sold directly to the consumer in the unopened bales, usually to "small consumers, as steamship companies, dry docks, marine shops, where they use the wiping rags more to mop up grease." Continuing, he said: "It is not so important that they receive the better grade of rags. * * * They take the poorer classes of rags, such as the paint people use, and people who use a *good wiping rag would demand the better ones.*" (Italics not quoted.) He further stated that his company sold the variety of rags represented by the illustrative exhibits, including both the large and the small, as "wiping rags." He concluded his testimony as follows:

Q. You have examined these samples sufficiently to make up your mind as to the class of merchandise they belong to?—A. Yes.

Q. And you consider them, so far as you know, to belong to the class as wiping rags and dealt in as wiping rags?—A. As wiping rags.

Q. And that applies to both the colored and white as well?—A. Yes.

The Government called Mr. Jarrett, the examiner at the port of Seattle, as a witness. He said that the illustrative Exhibits 1 to 4,

inclusive, correctly represented the merchandise involved in this case; and that both the large and the small rags in the illustrative exhibits were used as wiping rags, the larger rags for "service-station work by the Standard Oil and other corporations engaged in business of that character * * * and the smaller ones by the machine shops." He added: "They adapt to the work the size of cloth that they use." He concluded his testimony as follows:

Q. Mr. Jarrett, you are not prepared to deny the statements of the other witnesses that some of these things are too small, or too rotten, or too inferior to be suitable really for wiping purposes?—A. No; I wouldn't deny it. I think these people stated the matter very fairly with regard to that. ·

The court below held that the samples of rags offered in evidence as illustrative Exhibits 1 to 4, inclusive, had not been shown to be representative of the merchandise involved in the case, and refused to admit them or the testimony based on them. It held also that the importers had failed to overcome the presumption of correctness of the collector's decision, and, therefore, overruled the protest.

It is claimed here by appellant that the illustrative exhibits were erroneously excluded by the trial court; and that, as from 5 to 30 per cent of the rags are too small for use as "wiping rags," and have to be sorted, packed in smaller bundles, and "burlapped" before they can be sold to the consumer, they are not dutiable as "wiping rags" but free of duty, either as "junk, old," under paragraph 1601, or as "cotton waste" under paragraph 1560.

The Government contends that the illustrative exhibits were properly excluded; that the merchandise is not free of duty, either as junk or as cotton waste; and that, as the rags have been processed by the removal of buttons, hooks, and other foreign matter, and laundered, and, as they are bought, sold, and used as "wipers" or "wiping rags," they are dutiable under paragraph 1459 at 20 per centum ad valorem as nonenumerated articles manufactured in whole or in part. The Government concedes, however, that, as it failed to appeal, it is entitled to no better judgment than that rendered by the court below.

We think that the evidence is sufficient to establish that the illustrative Exhibits 1 to 4, inclusive, were properly identified as representative of the merchandise involved in the case. It may be doubtful whether the testimony of the witnesses for the importer was sufficient to warrant the acceptance of the exhibits as evidence. But such doubt as may have existed was dissipated by the positive testimony of Mr. Jarrett, who testified on behalf of the Government. The trial court rejected his testimony on the theory that he had not seen the merchandise in question. He testified that he was an examiner at the port of Seattle; that he had been examining and passing merchandise of the character of the exhibits for three years;

and that the illustrative exhibits correctly represented the merchandise involved in the case. He also told of his knowledge acquired by various investigations of the use to which wiping rags were put. He was an examiner at the port of entry. He was offered as a witness by the Government and introduced as one having knowledge of the facts in issue. We think that he intended, and that Government counsel intended, that he should be understood by counsel for the importer and by the court as testifying that he was the examiner who passed the merchandise in question. We are of opinion that the rejection of the illustrative exhibits and the testimony based thereon was error. However, as this evidence is before us, and, as the facts are not in dispute, the error was harmless; and we shall proceed to consider the case on its merits.

The merchandise was described in the invoices and consumption entries as "wiping rags." It was bought and sold and known in the trade as "wiping rags" or "wipers," those terms being used interchangeably.

The importer testified that, while it was necessary to repack the rags in smaller packages for sale to the consumers, no manufacturing processes were necessary to fit the rags for their intended use as "wipers" or "wiping rags."

In the case of *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, T. D. 41644, this court, in discussing rags which had not been laundered and from which buttons, hooks, and other foreign matter had not been removed, in an opinion by Smith, Judge, said:

They are fit for no commercial use except that of remanufacture into wiping rags, paper, or some other commodity. Some of the rags can be made into wiping rags, but before they can be used as wiping rags they must be trimmed, cleaned, and divested of any buttons attached to them. Wiping rags are articles of ultimate consumption, and, if rags are unfit for use by the ultimate consumer for the cleaning of windows, machinery, and cleansing purposes, they are not suitable for wiping purposes and can not be regarded as wiping rags. *By further processing, rags of suitable size, shape, and quality can be converted into wiping rags, but, in their condition as imported, the rags under consideration are not wiping rags.* The merchandise is not new waste, but at best that class of waste known as junk, old, and as junk, old, is eo nomine provided for without limitation in paragraph 1601 of the free list, that provision must prevail as against paragraph 1457, which covers only waste not specially provided for. (Italics not quoted.)

In the case of *United States* v. *Stone & Downer*, 12 Ct. Cust. Appls. 293, T. D. 40296, on authority of cases there cited, we said: "As a general rule, a mere cleansing process the purpose of which is to isolate the article of commerce from impurities, *and which does not advance it beyond a clean state or condition*, and which does not affect the article per se, can not be said to be * * * " a manufacturing process in a tariff sense. (Italics not quoted.) Likewise, the removal of buttons, hooks, and other foreign matter from a mate-

rial for the sole purpose of getting the material by itself would not be a manufacturing process. *United States* v. *Michelin Tire Co.*, 1 Ct. Cust. Appls. 518, T. D. 31544.

However, in the case at bar, the rags were not laundered and the buttons, hooks, and other foreign matter removed for the purpose of isolating a material from its impurities or getting a commercial commodity by itself. The rags were so processed for the purpose of removing them from the class to which they belonged ("junk, old"), and converting them into a new article having a new character, name, and use—namely, "wiping rags" or "wipers."

In the case of *Ishimitsu* v. *United States*, 11 Ct. Cust. Appls. 186, T. D. 38963, Barber, Judge, writing for the court said:

> The derivation from the Latin *manus*, hand, and *facio*, to make, of "manufacture" as a noun, indicates that its original meaning was something made by hand, while as a verb it would mean the hand processing necessary to produce the thing. While this meaning has been enlarged, yet, there still remains the idea that to constitute a manufacture of a thing, or a thing manufactured, it must appear that something has been produced, so changed, or advanced in condition from what it was before being subjected to the processing or treatment that whether of only one material or of more than one, it has *attained a distinctive name, character, or use, different from that originally possessed by the material or materials before being subjected to the manufacturing process.* (Beginning "attained" italics not quoted.)

Prior to the cleaning and the removal of buttons, hooks, and other foreign matter, the rags were fit only for remanufacturing. The purpose of the processing to which they were subjected was to convert them from junk into a new commercial commodity. The resultant of those processes was "wiping rags" or "wipers," bought and sold and known in the trade as such, and used for wiping purposes. The rags had a different character and a new and distinctive name and use. Obviously, the merchandise in question is not "junk, old," nor is it waste. In our opinion it is a manufactured article; and, as it is not specially provided for, it is dutiable at 20 per centum ad valorem under paragraph 1459, as claimed by the importer in its protest.

We are not unmindful of the testimony of the importer that from 10 to 20 per centum of the rags were too small to be suitable for use as "wiping rags." The witness, Nelson, testified that from 5 to 30 per centum were too small for such use. The witness for the Government agreed that the importer's witnesses had stated the facts fairly in this regard. However, so far as we know, no claim was made that the merchandise was segregable for duty purposes. Certainly no such claim has been made in this court. Furthermore, the merchandise was described in the invoices as "wiping rags"; and declared in the consumption entries to be "wiping rags." No suggestion was made to the officers of the Government that two classes of merchandise were included in the importation. In these respects this case differs from *United States* v. *Washburn-Crosby Co.*, 14 Ct. Cust. Appls. 243, T. D. 41874.

Section 507 of the Tariff Act of 1922 reads as follows:

Sec. 507. Commingling of Goods.—Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

Whether the two classes of merchandise, one dutiable and the other probably free of duty, could have readily been segregated we are unable to say. It is possible that, had the importer called the collector's attention to the commingled classes of merchandise by proper declarations in the entries or by other means, the respective quantities and values might readily have been ascertained; or, if not, the importer might have taken advantage of the privilege granted it by section 507 of segregating the merchandise at its own risk and expense under customs supervision, and thus avoided the payment of duty on a portion of the importation. Under the circumstances, however, we are unable to afford the importer such relief.

The Government failed to appeal; it is, therefore, entitled to no better judgment than that rendered by the court below. For this reason, although we think the judgment is erroneous, we must affirm it.

*Affirmed.*