MAJESTIC LACE & EMBROIDERY WORKS *v.* UNITED STATES (No, 3635)[1]

[1] T. D. 46891.

United States Court of Customs and Patent Appeals, January 22, 1934

*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Richard E. FitzGibbon* and *John F. Kavanagh,* special attorneys, of counsel), for the United States.

[Oral argument December 10, 1933, by Mr. Isenschmid and Mr. Kavanagh]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, holding merchandise consisting of woven fabrics in the piece, manufactured from thread or yarn made from waste silk, to be properly dutiable as "woven fabrics in the piece, composed wholly or in chief value of silk, not specially provided for," at the rate of 55 per centum ad valorem under the provisions of paragraph 1205 of the Tariff Act of 1922, as classified by the collector.

The merchandise was entered at the port of New York. Appellant protested the classification of the collector, making several claims, only one of which is relied upon before us, viz, that the merchandise is properly dutiable as a manufactured article, not specially provided for, at the rate of 20 per centum ad valorem under the provisions of paragraph 1459 of said tariff act.

The portions of said tariff act pertinent to the question here involved are as follows:

PAR. 1205. Woven fabrics in the piece, composed wholly or in chief value of silk, not specially provided for, 55 per centum ad valorem.

PAR. 1459. That there shall be levied, collected, and paid on the importation of all * * * articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Upon the trial before the Customs Court, four witnesses testified on behalf of appellant, and five witnesses testified on behalf of the Government. Appellant also introduced in evidence Exhibit 1, which is conceded to represent the merchandise here involved.

There is practically no dispute as to the facts in the case. Upon the trial, appellant's counsel conceded that Exhibit 1 is a "woven fabric in the piece." The merchandise is known as "Bourette" and was invoiced as "Machine-made Bourette (waste silk)."

One James Chittick, a consulting textile specialist, testified on behalf of appellant. He described the material from which the involved merchandise was made as follows:

* * * The last combing in the manufacture of spun silk produces a very short fiber, an eighth of an inch, one-fourth of an inch, one-half inch, three-

fourths of an inch long, with little curls and bunches that have not been combed out. That material, in that short uncombable form, is fed in to a carding machine, which is a large cylinder covered with fine wire teeth and surrounded by other cylinders also covered with wire teeth which work against it. And as the material passes through this card, the positions of these short fibers get somewhat parallelized. And when it comes out of the machine, it will come out in the form either of a thickish lopping or sliver, where the material is combined together, unaccompanied by twist, or into a thinner form known as rovings. That is, there are what you might call "pencils" or aggregations of material rubbed into a rounded form with no twist in them whatsoever but the fibers just clinging together by their natural cohesion. These pencils then are wound on a large roller, called a "jack spool." And these jack spools are put into a spinning mule; a self-acting mule, and on the mule each one of these rovings is drawn out thinner and thinner, accompanied by twist; being finally wound up on the bobbins as the twisting and the winding up goes on. In that way they come into the form of a manufactured thread such as we find in this goods. (Pointing.)

X Q. Of a yarn like in Exhibit 1?—A. Yes.

X Q. And that is how Exhibit 1 is made?—A. That is the way I'd make it.

X Q. You were referring to the fibers that became parallel to one another: Would you say that those fibers might be called filaments, would they be silk filaments?—A. Yes; the individual cocoon filaments of course they are there. Yes, filaments.

The witness further testified that the involved merchandise was made from the lowest grade of silk waste, and that such waste was itself produced from a waste; in other words, was a waste of a waste.

The witness, however, repeatedly stated that the fibers of which the merchandise was composed are silk. In response to questions propounded by the trial court, he testified as follows:

Judge TILSON. Is there ever a point at which silk is not silk, where it gets so low that there is some part of it in the fag end that is not silk?

The WITNESS. It is silk.

Judge TILSON. It is silk?

The WITNESS. It is silk. No, never mind that. But when you get so low that you cannot comb it, it cannot be made into spun silk yarn, it cannot be combed, we come to this; when it comes so low, so short, so trifling that it cannot be combed any further, it then does not go into spun silk yarns, it becomes these bourette yarns.

Judge TILSON. Yes, but we are not taking spun silk, that is not in the act here. We have got silk. We don't know where spun silk begins and where silk ends.

The WITNESS. All right. Silk, if you like, then. There is no line of demarcation.

Judge TILSON. I want to know the real facts about it. I am interested.

The WITNESS. About lines of demarcation, all I can say is that this is the product of the silk worm. So is spun silk. So is reeled silk. So is silk in every direction. It is silk; that I do not question for a moment.

The trial court in its decision made the following statement:

Counsel for the plaintiff insists in his brief filed herein that silk and silk waste are separate and distinct articles, and that Congress has long and consistently recognized this distinction, and that Congress has provided for fabrics and various articles and manufactures of silk but not for fabrics and articles or manufactures of silk waste in various tariff acts. Paragraph 1201 of the Tariff Act of 1922, which is one of the paragraphs under which plaintiff makes claim

in this case, seems to be a fair answer to the above contention of plaintiff. There we find a provision "*silk* partially *manufactured* * * * *from* raw silk, *waste silk*, or cocoons". The only fair conclusion to be drawn from this provision is that Congress recognized that silk manufactured from raw silk, silk manufactured from waste silk, and silk manufactured from cocoons, were all manufactures of silk. It should be noted that in paragraph 1201 Congress was only dealing with silk partially manufactured. In paragraph 1201 Congress did not provide for silk partially manufactured from raw silk, waste silk, or cocoons, as silk waste, as waste, not specially provided for, nor as a nonenumerated unmanufactured article, nor as a nonenumerated manufactured article, but as a manufacture of silk. If waste silk, partially manufactured, is silk partially manufactured the logical conclusion would be that waste silk manufactured into woven fabrics in the piece would be woven fabrics in the piece composed wholly or in chief value of silk.

We are in accord with the above-quoted views of the trial court.

The master rule in the consideration of all statutes is to carry out the legislative intent. *Procter & Gamble Manufacturing Co.* v. *United States*, 19 C.C.P.A. (Customs) 415, T.D. 45578.

Paragraph 1201 of the Tariff Act of 1922 reads as follows:

PAR. 1201. Silk partially manufactured, including total or partial degumming other than in the reeling process, from raw silk, waste silk, or cocoons, or silk and artificial silk, and silk noils exceeding two inches in length; all the foregoing not twisted or spun, 35 per centum ad valorem.

It is clear from this paragraph that Congress regarded that silk could be manufactured from waste silk, and, as stated by the trial court, the only fair conclusion to be drawn from this fact is that Congress recognized that fabrics manufactured from such silk were manufactures of silk.

It is our opinion that Congress intended that an article or fabric manufactured from thread or yarn, manufactured from waste silk or silk waste, should be considered, for tariff purposes, as a manufacture of silk. In "Notes on Tariff Revision," 1909, at page 791, we find the following:

*Silk waste* comprises the floss silk or outer coverings of cocoons, the perfect cocoons reserved for propagation, badly formed, entangled, and otherwise defective cocoons, and the loose fiber produced in after stages of working. All these "wastes" are now utilized in the manufacture of silks and yarns of the cheaper grades.

Appellant relies upon the case of *Pacific Iron & Metal Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 433, T.D. 42605, which involved the classification of old cotton rags which the collector had assessed with duty as waste under paragraph 1457 of the Tariff Act of 1922. This court held that, as the rags had been manufactured before importation for use as "wipers", they were classifiable as unenumerated manufactured articles under paragraph 1459 of said act.

The opinion in that case discloses that no issue was raised by the parties as to the dutiability of the articles under paragraph 921 as

manufactures of cotton, or of which cotton was the component material of chief value; however, the cotton schedule of the Tariff Act of 1922 has no language comparable to the language of paragraph 1201 of the silk schedule.

Counsel for appellant has called our attention to the fact that in paragraph 1201, *supra*, the term "waste silk" is used, while in paragraph 1663 of the free list the term "silk waste" is used, and suggests that Congress intended that "waste silk" should include only wastes resulting at the various stages of the process of manufacturing different kinds of silk, and that by the term "silk waste" Congress intended to include only material remaining after all the forms of silk provided for in paragraphs 1201 to 1204, inclusive, have been extracted from the product of the silk worm.

We have carefully examined the legislative history of these paragraphs and their predecessors in prior tariff acts, and can find no warrant for drawing any distinction between "waste silk" and "silk waste." See Summary of Tariff Information, 1920, page 478. Appellant's expert witness used these terms interchangeably, and we think Congress did likewise.

Appellant assigns error in the exclusion of testimony offered in the trial court with respect to the use of the fabric here involved, and contends that, if permitted, it would have established that the merchandise here in question has but a single use, viz, as a step in the manufacture of burnt-out laces, is specially prepared for that purpose, and that the imported fabric cannot be used for any of the purposes for which silk fabrics are generally used in this country, and therefore should not be regarded as a silk fabric.

We are of the opinion that such excluded testimony was irrelevant and immaterial with respect to the proper classification of the merchandise. Under the language of paragraph 1205, the use to which a fabric is put, or may be put, is immaterial. There are only two questions for determination in classifying this merchandise under said paragraph 1205:

1. Is it a woven fabric in the piece? Appellant concedes that it is.
2. Is it composed of silk? We hold that the trial court properly so found.

As the merchandise consists of woven fabrics in the piece, composed wholly or in chief value of silk, not specially provided for, it is dutiable under said paragraph 1205 if the terms used in said paragraph be given their common meaning.

Appellant does not claim commercial designation excluding the merchandise from said paragraph 1205.

The judgment of the United States Customs Court is *affirmed*.