UNITED STATES *v.* PYROMETER INSTRUMENT CO. (No. 3643)[1]

United States Court of Customs and Patent Appeals, January 29, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Siegel & Mandell* (*Samuel T. Siegel* of counsel) for appellee.

[Oral argument December 11, 1933, by Mr. Folks and Mr. Samuel T. Siegel]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Two importations and entries of pyrometers were made by the appellee at the port of New York, under the Tariff Act of 1930. They were classified by the collector at 60 per centum ad valorem under paragraph 228 (a) of the said act, as optical measuring or testing instruments. The importer protested in each case, claiming the goods

---

[1] T. D. 46910.

to be dutiable, · alternatively, at 45 per centum under paragraph 228 (b), as optical instruments, at 40 per centum under paragraph 360, as scientific instruments, at 27½ per centum, as all other machines, under paragraph 372, or as articles having as an essential feature an electrical element, at 35 per centum under paragraph 353 of said tariff act.

The protests were consolidated for the purposes of trial. The United States Customs Court sustained the protests under said paragraph 360, holding the goods to be properly dutiable as scientific instruments. The Government has appealed.

In this court the Government contends that the goods were properly classified, and that the imported goods are optical measuring instruments and not scientific instruments. The Government also contends that the importer has entirely failed to sustain the burden of proof resting upon it. On the other hand, the importer contends that the goods are dutiable, not as assessed by the collector, but either as scientific instruments under said paragraph 360, or as articles having as an essential feature an electrical element, under said paragraph 353. No contention is made as to the other claims in the protest and they will not be further considered.

Said paragraphs 228, 353, and 360, so far as material, are as follows:

PAR. 228. (a) Spectrographs, spectrometers, spectroscopes, refractometers, saccharimeters, colorimeters, prism-binoculars, cathetometers, interferometers, haemacytometers, polarimeters, polariscopes, photometers, ophthalmoscopes, slit lamps, corneal microscopes, optical measuring or optical testing instruments, testing or recording instruments for ophthalmological purposes, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, 60 per centum ad valorem.

\*          \*          \*          \*          \*          \*          \*

PAR. 353. \* \* \* articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; \* \* \*.

PAR. 360. Scientific and laboratory instruments, apparatus, utensils, appliances (including surveying and mathematical instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for, 40 per centum ad valorem; drawing instruments, and parts thereof, wholly or in chief value of metal, 45 per centum ad valorem: \* \* \*

The imported articles are invoiced as laboratory optical instruments. They are cylindrical in shape, each about ten inches in length and three inches in diameter. They are used for ascertainment of the degree of heat in objects, and will detect and register, when properly operated, temperatures from 1,400 to approximately 5,000 degrees Fahrenheit. In the front end of the instrument is an eyepiece containing a lens and a rubber shield for the eye of the operator, and at the opposite end is an object glass or lens. Within the interior of the instrument an ordinary dry electric cell connected with a calibrated light bulb

is placed. By means of this light, a target in the objective is illuminated when desired by the operator.

The operation of this instrument is thus described by the witness Scheick:

Energy is set up in that instrument, self-contained, as I notice, to illuminate that target. The operator sees the image of that distantly located object on that same plane, and at the same time he sees this target. He is able by an adjustment of the instrument to vary the color, or intensity is probably a better word than color there, of the illumination from the distant object until he arrives at a match in the intensity of the target under that illumination and in the adjustment that he has made of the intensity of the objective, of the object that he has seen in there. The adjustment that has been made to bring about that image at the same time locates a scale in a convenient position so that the temperature can be read.

The record shows that it is used for detecting the temperature of hot and molten steel and iron. It is more generally used "in industry where that object might be, in the case of our plant, a pot of molten glass, or the temperature inside of the furnace in a steel plant," according to the witness Scheick. It appears from the testimony that the instrument would not function without a properly calibrated electric bulb, by means of which a comparison may be made between the intensity of light from the bulb and from the object which is being examined.

It was incumbent upon the importer to sustain its claims. It first insists the instruments are scientific instruments. The record shows them to be used in applied, and not pure, science. They are not, therefore, properly dutiable as scientific instruments, under the rule announced in *W. L. Conover* v. *United States*, 17 C.C.P.A. (Customs) 324, T.D. 43743, and *United States* v. *Adlanco Ind. Prod. Corp.*, 21 C.C.P.A. (Customs) 249, T.D. 46778, and cases therein cited.

A claim is urged, alternatively, under said paragraph 353, that they are articles having as an essential feature an electrical element. The pyrometers before us contain a small, calibrated light bulb, drawing electric power from a small dry battery, which is claimed to be the essential feature.

It will be observed that said paragraph 353 enumerates a number of the articles which are intended to be included therewithin, "such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs." We are unable to conclude that these pyrometers, where the only function of the electric element is to emit light, is "such as" or like, any of the articles enumerated in the paragraph. In said enumeration, the articles are such as receive their operating power from electric current, and which are commonly designated as electrical equipment, such as electric fans, or electric heaters, or electric locomotives. Here, how-

ever, the electric bulb and battery perform no function except to serve as a basis for the comparison which the eye makes, by use of the instrument.

Not only is this true, but the judgment below, favorable to the importer, found the dutiable rate to be 40 per centum, under said paragraph 360. The importer did not appeal. Hence, it cannot here be heard to insist upon a rate of 35 per centum under said paragraph 353, a more favorable rate than it received below. *Pacific Iron & Metal Co.* v. *United States*, 15 Ct. Cust. Appls. 433, T.D. 42605; *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T.D. 41318.

We are, therefore, of opinion the claim under said paragraph 353 cannot be sustained.

The importer having failed to sustain either ground of protest upon which it relies, it follows that it does not become necessary to discuss the correctness of the collector's classification, and the judgment of the United States Customs Court must be, and is, *reversed.*