UNITED STATES *v.* BELGAM CORP. ET AL. (No. 3750)[1]

---

United States Court of Customs and Patent Appeals, November 13, 1934

*Joseph R. Jackson*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.

*Walden & Webster, Tompkins & Tompkins* (*J. L. Klingaman, J. Stuart Tompkins*, and *Allerton de C. Tompkins* of counsel) for appellees.

[Oral argument October 3, 1934, by Mr. Kavanagh, Mr. J. Stuart Tompkins, and Mr. Klingaman]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal by the United States from a judgment of the United States Customs Court, Third Division, sustaining 175 protests of appellees, insofar as such protests related to the merchandise here involved, and insofar as said protests claimed free entry of the said merchandise under paragraph 1651 of the Tariff Act of 1922.

The merchandise here involved was imported by various importers, and the cases were consolidated by the Customs Court and tried together. All of such importers are appellees herein.

The merchandise consists of white and colored cotton rags imported from Japan. It appears that some of the rags, before their importation, had been bleached, some laundered, and that such extraneous matter as buttons, hooks, and eyes had been removed from the rags. The rags are clearly of the same character as were involved in the case of *Hawley & Letzerich et al. v. United States*, 19 C. C. P. A. (Customs) 47, T. D. 44893.

As appears from a stipulation in the record, the merchandise involved in 136 of the protests was classified and assessed with duty at 20 per centum ad valorem under paragraph 1459 of the Tariff Act of 1922 as articles manufactured in whole or in part, not specially provided for, and the merchandise involved in 39 of the protests was classified and assessed with duty at 10 per centum ad valorem under the provisions of paragraph 1457 of said tariff act as "Waste, not specially provided for."

All of the protests claimed the merchandise to be free of duty under the provisions of paragraph 1651 of said act, which paragraph reads as follows:

PAR. 1651. Rag pulp; paper stock, crude, of every description, including all grasses, fibers, rags, waste, including jute, hemp and flax waste, shavings, clippings, old paper, rope ends, waste rope, and waste bagging, and all other waste not specially provided for, including old gunny cloth, and old gunny bags, used chiefly for paper making, and no longer suitable for bags.

Voluminous testimony was taken by the trial court, a large number of witnesses being called by the respective parties.

The trial court held that all questions of law involved were settled by our decision in the case of *Hawley & Letzerich et al. v. United States*, *supra*, leaving only the question of fact of whether rags of the character of those here involved were chiefly used as paper stock at and prior to the passage of the Tariff Act of 1922. Upon this question of fact, the court found in the affirmative and sustained the protests, as aforesaid. Judgment was entered accordingly, and from such judgment this appeal was taken by the Government.

As hereinbefore stated, the merchandise here involved is of the same character as was involved in the *Hawley & Letzerich* case, *supra*, and the principal questions of law here raised were there raised by the Government, and decided adversely to it.

The Government here claims that rags of the character here involved were processed by being bleached, laundered, or sorted, and having the buttons, etc., removed, and that, because of these processes being applied to them, the rags may not be regarded as "paper stock, crude." The same contention was made in the case last cited, and we there said:

Emphasis has been placed by the Government upon the fact that the samples of the exhibits show the rags to have been washed and the buttons removed, and it is insisted that paper-stock rags are not imported in this condition but only in an unclean state; that they are not "crude" rags, because they have been washed, sorted, fumigated, sized, and had the buttons, clasps, etc., removed.

As for the sizing, that is answered by an inspection of the official samples. The dimensions are so various and different as to negative the contention that they have been sized. As to the other processes, we know of no adjudication by any court holding that these destroy the crudeness of the rags or that putting them in a sanitary condition by fumigation and washing or that removing hooks and buttons destroys their usefulness for paper stock.

Paragraph 1651 reads: "* * * paper stock, crude, of every description, *including all* * * * *rags* * * *.*" (Italics ours.) It is our present opinion that Congress did not intend that rags should be divided into classes and that only rags crude in fact should be regarded as paper stock, crude, but intended that all rags chiefly used for making paper at the time of the enactment of the Tariff Act of 1922 should be classified as "paper stock, crude." As we now view it, there was no necessity in the *Hawley & Letzerich* case, *supra*, of passing upon the condition of the rags there involved, it having been established that they were paper stock. The question of whether, under said paragraph 1651, all rags which, at the time of the enactment of the Tariff Act of 1922, were chiefly used for making paper should be considered as crude was not raised in said case.

The Government contends further that the chief use of rags of the character here involved should be determined as of the dates of their importation and not at the time of the enactment of the Tariff Act of 1922, and that the record concededly established that, at the dates of their importation, such rags were chiefly used as wiping rags and not for paper making.

The same question of law was involved in the *Hawley & Letzerich* case, *supra*, and we there approved the rule stated in the case of *Wilbur-Ellis Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 472, T. D. 44762, in which case we said:

* * * if there be an *eo nomine* designation, the common meaning thereof must be determined as of the date of the enactment of the tariff act * * *.

In the *Hawley & Letzerich* case, *supra*, we treated the term "paper stock" as an *eo nomine* designation. Such treatment of the term "paper stock" was in accord with the decision of this court in the case of *Goldsmith's Sons* v. *United States*, 13 Ct. Cust. Appls. 69, T. D. 40932, where the article involved was "football leather." This term was regarded by the court as a descriptive term and the opinion states:

We have held that the meaning to be given to a descriptive word or words used in a tariff act, is the meaning which the word or words had at the time of the enactment of that act. *Smillie & Co.* v. *United States*, 12 Ct. Cust. Appls. 365, T. D. 40520, and cases therein cited. The inquiry here, therefore, must be as to the common or commercial meaning of the words "football leather", at the time the Tariff Act of 1922 was approved. Much of the testimony in the record is, in view of this conclusion, irrelevant. What the importers may or may not use the material in question for now has no relevancy to this issue, namely: Was the material imported commonly or commercially known as "football leather" on September 21, 1922?

In the *Wilbur-Ellis* case, *supra*, we further held that where the statute specifically provides that the thing designated shall be classified under a given provision only if chiefly used for a specified purpose, the question of use should be determined as of the date of the importation of the particular merchandise involved, or immediately prior thereto. It will be noted that said paragraph 1651 contains the phrase "used chiefly for paper making;" but in the *Hawley & Letzerich* case, *supra*, we held that said phrase does not relate back to the term "paper stock" and that therefore the last above-mentioned rule, stated in the *Wilbur-Ellis* case, *supra*, had no application.

We adhere to the views expressed by us in the case of *Hawley & Letzerich et al.* v. *United States*, *supra*, upon the question of law last above discussed, and they are controlling here. We hold that the rags here involved should be classified as "paper stock, crude," within the meaning of that term as used in said paragraph 1651 if rags of that character were chiefly used for paper making at the time of the enactment of the Tariff Act of 1922.

Upon this question of fact the testimony is very conflicting. We have examined it with care; as we have said, it is very voluminous and no good purpose would be served in analyzing it in this opinion in detail. From the time of its creation, this court has followed the rule, declared in the case of *United States* v. *Riebe*, 1 Ct. Cust. Appls. 19, T. D. 30776, that findings of fact of the court below will not be disturbed unless clearly contrary to the weight of the evidence. Applying this rule to the case at bar, we cannot conclude that the finding of the trial court that rags of the character here involved were, at the time of the enactment of the Tariff Act of 1922, chiefly used for making paper, is clearly contrary to the weight of the evidence, and therefore such finding will not be overruled by us.

Counsel for the Government contend that the court below did not analyze the testimony in the case, and imply that it did not give such testimony proper consideration. This contention is based upon a statement in the opinion as follows:

* * * We shall not assume to analyze the 500 pages of testimony, submitted * * *.

It is clear to us that this statement should not be construed as declaring that the court had not analyzed the testimony, but it is obvious that the court meant by that statement that it would not assume to analyze, *in the opinion rendered*, the 500 pages of testimony

In arriving at our conclusion herein, we have analyzed the testimony found in the record but, as before stated, we do not find it necessary to incorporate such analysis in this opinion.

There remains but one question to be considered, and that is whether we may here consider the Government's contention that the trial court erred in admitting certain testimony offered by appellees and excluding certain other testimony offered by the Government. The Government's assignments of error upon the point are two in number, and read as follows:

13. In admitting incompetent, irrelevant, and immaterial evidence over the objection of the Government.

14. In excluding competent, relevant, and material evidence offered by the Government.

In its brief Government counsel point out 27 alleged errors in admitting and excluding testimony. Appellees contend that the Government's assignments of error above set out are too vague and indefinite, and that they are insufficient to raise the question here of whether the trial court erred in admitting or excluding testimony. Appellees' counsel, in support of this contention, cite the rule stated in Corpus Juris, vol. 3, p. 1370, as follows:

[§1519] e. EVIDENCE—(1) Admission and Exclusion—(a) In General. * * * A general assignment of error that the court erred in admitting or excluding evidence is insufficient to present any question for review. The particular error relied upon must be specified. Speaking more specifically, the assignment must point out the particular evidence, the admission or exclusion of which is claimed to be erroneous, or such evidence must be set out in the assignment of error. If the error assigned is refusal of the court to permit a witness to answer a question, the assignment must show what answer the witness was expected to make, its materiality, and that the judge was informed thereof at the time of the ruling.

Without expressing approval of the rule as broadly as stated in the above quotation, we are clearly of the opinion that the Government's assignments of error, Nos. 13 and 14, are so vague and indefinite that the Government may not here raise any question respecting error of the trial court in admitting or excluding evidence.

As stated in the case of *Philips & Colby Construction Co.* v. *Seymour et al.*, 91 U. S. 646:

The object of the rule requiring an assignment of errors is to enable the court and opposing counsel to see on what points the plaintiff's counsel intend to ask a reversal of the judgment, and to limit the discussion to those points. * * *

In the case of *United States* v. *J. L. Galef*, 18 C. C. P. A. (Customs) 180, T. D. 44377, we said:

Parties desiring a review of any question decided by the lower court should follow the statute and by assignment of errors point out the points on which it is intended to ask a reversal of the judgment. While this court is not disposed to be at all technical upon this subject, the assignment of errors should clearly, by express words, or fair implication, point out the errors upon which it is intended to rely to secure a reversal.

Clearly general assignments of error, such as made by the Government in this case upon this point, do not comply with the rule above stated. They do not point out by express words or fair implication the particular errors which it is intended to rely upon to secure a reversal. It is not sufficient that the errors claimed by an appellant are set out in his brief. *Briscoe* v. *Rudolph et al.*, 221 U. S. 547. Therefore these assignments of error will not be considered by us.

We find no error in the decision of the trial court and its judgment is *affirmed*.

### DISSENTING OPINION

BLAND, Judge: I regret that I cannot agree with either the conclusion or the reasoning of the majority in this decision.

In *Hawley & Letzerich et al.* v. *United States*, 19 C. C. P. A. (Customs) 47, T. D. 44893, this court held definitely that the wiping rags involved were "crude". I dissented there.

In the present case, attention was called to the fact that in *Pacific Iron & Metal Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 433, T. D. 42605, this court held that wipers or wiping rags which had not been processed as much as the ones at bar were nonenumerated manufactured articles; that they had been processed with the definite purpose in view of making a new article of commerce—wipers; and that the processing was not a means of cleansing or getting the article by itself.

It is my understanding of the present decision that the majority does not intend to hold that the wipers are crude; but that an interpretation of the paragraph is given which requires that rags, even though not crude, be included in the term "paper stock, crude", for the reason that they are specifically named in the *including* phrase. Following the decision in *Wilbur-Ellis Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 472, T. D. 44762, the majority holds that since "paper stock" is a designation by use, we must go to the chief

use of the article at the time Congress used the term in order to ascertain if the imported merchandise is paper stock.

Although regrettable anomalies result in holding that the dutiable status of one class of merchandise shall be determined by its use at the time of importation and that of another almost identical class of merchandise be determined as of the date of the enactment of the statute, I am not disposed here to disagree with the majority as to its finding in this respect. It is simply a case of two well-settled rules being in conflict: First, the meaning of terms must be ascertained at the time of their use by Congress; second, tariff acts are made for the future.

My trouble in the instant case arises from the fact that the majority by construing the paragraph as above indicated, have eliminated the word "crude" which Congress deliberately put in the paragraph. It may be suggested that the word "crude" may be given application to materials other than those named in the *including* phrase. I am not so sure of this, but I am sure that the wipers are not now or were not at the time of the passage of the act, crude rags, and I am equally of the impression that they were not *rags* at all within the meaning of that paragraph. We held in the *Pacific Iron & Metal Co.* case, *supra*, that the wipers there involved were junk, old, before being processed. They also were paper stock, crude, then, if chiefly used for paper making. If they were crude then, they certainly are not crude now. The old rags in this instance have been processed until they are finished manufactured articles ready for use. They have been bleached and otherwise made ready for wiping oil, and while broadly one may call them "wiping *rags*", they are interchangeably called "wipers".

It is conceded in this case that these articles are not paper stock today but are wipers.

It will be noticed that the paragraph reads: "paper stock, crude, *of every description, including all * * * rags*". I am not so sure but what if the interpretation of the paragraph which the majority now have decided upon is to maintain, "all" rags may be free irrespective of their paper-stock character. Let us suppose that goods identical with those at bar come in without having been processed and the proof shows that such goods are not used chiefly for paper stock. Would they be free under this paragraph? There certainly is some doubt about this question in view of the holding in the *Hawley & Letzerich* case, *supra*, that the term in the latter part of the paragraph "used chiefly for making paper" relates only to "old gunny bags". It might be contended that the term "all rags" might not include non-paper-making wipers under the interpretation of the majority on account of the term "paper stock, crude". That is probably true if we give any effect to the word "crude". But the majority declines

to permit the word "crude" to modify "rags". The meaning of "paper stock" must be determined as of 1922, but I know of no authority for holding that the meaning of the word "crude" should be ascertained as of 1922 since "crude" is not an *eo nomine* designation by use.

In conclusion I must point out that it certainly was not the intent of Congress in the enactment of paragraph 1651, Tariff Act of 1922, to permit the free importation of enormous quantities of finished wipers, used almost solely for wiping purposes, simply because some time someone might be able to prove by certain witnesses that in 1922 they were chiefly used for making paper. It brings about a result which I think could be and should be avoided. It could be avoided, even under the interpretation of the majority, by holding that the wipers in this instance are not *rags* within the meaning of the paragraph.