(C. D. 537)

S. Schapiro & Sons v. United States

United States Customs Court, Second Division

(Decided September 25, 1941)

*Jordan & Klingaman* (*J. L. Klingaman* of counsel) for the plaintiffs.
*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Kincheloe, Judge: This suit is brought by plaintiffs against the United States for the recovery of certain duty alleged to have been wrongfully levied by the collector of customs at the port of New York on certain imported merchandise. The said merchandise is invoiced as "Bleached White Wipers," and was imported from Japan in November, 1933. It was assessed for duty at 3 cents per pound under the provisions of paragraph 922 of the Tariff Act of 1930, reading:

Par. 922. Rags, including wiping rags, wholly or in chief value of cotton, except rags chiefly used in paper-making, 3 cents per pound.

The plaintiffs' protest claims, inter alia, that the rags are free of duty under paragraph 1750 of said act, as paper stock.

No testimony or samples of the rags have been introduced in evidence by either side, the protest simply having been submitted for decision upon a written stipulation of the facts herein by both sides, which, so far as relevant, reads as follows:

It is hereby stipulated and agreed between counsel as follows:

1. That the merchandise consists of old cotton rags packed in the following manner. Approximately fifty pounds of rags are laid flat on top of each other and the sides and ends turned in to make a rectangular bundle which bundle is wrapped and tied. Ten such bundles are then packed and compressed into a bale and wrapped with burlap.

2. That the rags consist in part of wiping rags, and in part of rags used chiefly for paper making, the respective proportions not determined at the time of importation, and that the entire importation was assessed for duty at 3 cents per pound under paragraph 922, Tariff Act of 1930.

3. That these two classes of rags were intermingled and in order to ascertain the proportion of paper making rags, it is necessary to open the bales and bundles and to sort the rags by hand, but that no such sorting was necessary for appraisement purposes.

4. That no request for segregation under Sec. 508 was made by the plaintiff, and that the rags were not segregated under customs supervision.

5. That subsequently without government supervision the importer ascertained the amount of rags chiefly used for paper making and found same to be 4972 pounds and that for the purpose of this record the government accepts said finding of the importer as correct.

6. That under the act of 1922 and under the act of 1930 up to February 12, 1933, it was the practice of the plaintiff and other importers to segregate under customs supervision the packages designated by the collector of customs for examination; and of the collector to pass free of duty such proportions of the importation as were found to consist of rags chiefly used for paper making, and to classify the remainder for duty.

7. That the merchandise was imported during the time when the ruling of the Commissioner of Customs dated January 13, 1933, and published as T. D. 46106, Abstract 4 (63 Treas. Dec. 70), reading as follows, was in effect:

(4) Cotton rags —Japanese wipers
Certain cotton rags of a type known as Japanese wipers contain no mingled quantities of paper stock segregable under Section 508 of the Tariff Act of 1930. Change of practice effective thirty days from the date of the publication of this abstract in the weekly TREASURY DECISIONS. Bureau of Customs circular letter No. 942 dated January 11, 1933 (110428)

and was of the kind covered by said ruling.

8. That the full text of the circular letter of the Commissioner of Customs of which T. D. 46106, Abstract 4 is a part was as follows:

Bureau of Customs Circular LetterNo. 942

*To Collectors of Customs and Others Concerned:*

Reference is made to Bureau of Customs Circular Letter No. 896, of August 10, 1932. Since the date of that letter, the Bureau has continued its investigation of the importation, examination, and classification of cotton rags, with special reference to the class of rags referred to as "Japanese wipers."

The Bureau is now satisfied that "Japanese wipers" consist in their entirety of specially selected, specially processed, and specially packed cotton rags which, in the condition in which they are imported into the United States, differ distinctly from any class of rags chiefly used in this country for paper making.

While it is true that by sorting any importation of "Japanese wipers," the importer may obtain a quantity of rags which, if separately imported, would be unsalable for anything but paper stock, it is found that no such rags have been separately imported, and that the quantities of the imported "Japanese wipers" which find their way into paper making are negligible. The Bureau is accordingly of the opinion that all "Japanese wipers" are properly classifiable as cotton rags not chiefly used for paper making dutiable at the rate of 3 cents per pound under paragraph 922 of the Tariff Act of 1930.

Certain indications have reached the Bureau that some importers of "Japanese wipers" have arranged, or will arrange, with their foreign shippers for a different packing of the goods under consideration than has heretofore been customary in the trade. If an importer requests permission to segregate any importation of cotton rags under the provisions of section 508 of the Tariff Act, he should be granted the privilege in accordance with the procedure set forth in Circular Letter No. 896, but no segregated rags shall be classified otherwise than under paragraph 922 unless the segregation is completed at the importer's expense within ten days from the date of entry, as provided in section 508 of the Tariff Act and Circular Letter No. 896, and the examiner is satisfied that the segregated portion of the merchandise consists of rags of a kind not ordinarily found in shipments of "Japanese wipers" and, further, of a kind which is chiefly used in the United States for paper making.

In the designation of examination packages from importations of "Japanese wipers," the collector shall designate one bale of each mark or grade in addition to the usual 10%, the extra bales to be delivered to the appraiser's stores under cord and seal, to be held by the appraiser for use as samples for presentation to the Customs Court in the event a protest is filed against the decision of the collector with respect to their classification. When the collector is satisfied that no protest will be filed, the sample bales may be released to the importer. The liquidation of entries covering importations of cotton rags of which full bales are being held as samples should be expedited by collectors and comptrollers in order to eliminate any undue delay in the release of such bales if no protest is filed.

Circular Letter No. 896 is modified to the extent herein indicated, and the last paragraph thereof, requiring monthly reports of the results of segregations of importations of cotton rags, is revoked. In all other respects the instructions therein contained shall continue in full force and effect.

As it appears that the instructions contained in this letter will result in the assessment of greater duties than it has been the established practice to assess when importations of "Japanese wipers" were segregated under section 508 of the Tariff Act, the change of practice shall be made effective only with respect to importations entered or withdrawn for consumption after the expiration of thirty days from the date an abstract of this letter is published in the weekly Treasury Decisions.

F. X. A. Eble,<br>
Commissioner of Customs.

It will be seen from the foregoing stipulated facts that the only question for our determination is one of law, namely, whether all of the imported merchandise is dutiable as assessed by the collector as commingled merchandise under the provisions of section 508 of said Tariff Act of 1930, by reason of the failure of the plaintiffs to request a segregation of the merchandise under said section and in the absence of any segregation within the statutory time under Government supervision.

Said section 508 reads as follows:

SEC. 508. COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise cannot be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

The rags may be said to be of the mixed wiping and paper stock variety which were before this court in the case of *Schapiro & Sons* v. *United States*, T. D. 48305, affirmed by our appellate court in *United States* v. *Schapiro & Sons* (24 C. C. P. A. 343, T. D. 48771) and in the case of *Hagy Waste Works* v. *United States* (2 Cust. Ct. 385, C. D. 162).

Counsel for the plaintiffs in their brief admit that under section 508 the duty devolves upon importers to segregate such rags if "the quantity of each class of such merchandise cannot be readily ascertained by customs officers." They then cite our decision in *Schapiro & Sons* v. *United States*, T. D. 48305, *supra*, as authority for holding that the duty for the segregation of such imported rags was on the customs officers. In that case the importations consisted of mixed cotton wiping and paper stock rags which had been segregated by the importers under said section 508 of said act of 1930, as a result of which certain percentages of the importations were returned as paper stock rags, free of duty under said paragraph 1750 of said act of 1930. Certain of the importations however were entirely classified and assessed for duty as cotton wiping rags under said paragraph 922 in accordance with the ruling of the Commissioner of Customs dated January 13, 1933, published as T. D. 46106-4, that "certain cotton rags of a type known as Japanese wipers contain no mingled quantities of paper stock segregable under section 508 of the Tariff Act of 1930." We held such ruling of the Treasury Department to be entirely without warrant of law and of no binding force insofar as it in effect attempted to classify merchandise before importation regardless of the actual facts with reference thereto.

As to the question of segregation under said section 508 referred to by said ruling, we stated in our decision after quoting from the testimony of the Government examiner, that "The foregoing quoted testimony is certainly proof that so-called Japanese wipers are readily capable of segregation, and that the collector of customs had been in the habit of making such before the publication of said Treasury Department prohibition to the contrary, as well as in the case of later importations."

The question of a compliance by the importers with said section 508, regarding segregation or request for segregation, was not in issue in that case, but only whether said Treasury Department ruling, T. D. 46106-4, *supra*, was conclusive on the question of fact as to the dutiable character of the merchandise.

It is now realized that the use of the language "readily capable of segregation" on our part was too broad and unnecessary, and should more properly have read "capable of segregation," as evidenced from the fact that up to that time segregation had always been made by the importers of mixed wiping and paper stock rags under custom

supervision, by request. A reading of the decision of the appellate court affirming our said decision, *supra,* will show that they understood the matter of the segregation of the cotton rags in this way. *United States* v. *Schapiro & Sons,* 24 C. C. P. A. 343, *supra.*

So far as our experience with so-called Japanese wiping rags which have come before us in the past is concerned, we are satisfied that they are not readily segregable by customs officers from a *per se* examination of the merchandise; but this has never prevented an importer from making a segregation under said section 508 "at his own risk and expense under customs supervision within ten days after entry thereof." A careful reading of said section 508 we think clearly shows that it does not compel a segregation of commingled merchandise by the customs officers unless it is readily segregable by him, but that it gives an importer the right to make such segregation under customs supervision within 10 days after entry thereof, which latter provision is mandatory and a condition precedent to having mixed goods separately classified for duty. Note *Pacific Iron & Metal Co.* v. *United States,* (15 Ct. Cust. Appls. 433, T. D. 42605).

The situation with reference to the segregation of commingled merchandise we think is aptly stated by our appellate court in *United States* v. *Holler* (28 C. C. P. A. 124, C. A. D. 133) where the commodity before the court consisted of fish, some of which were the product of American fisheries, and some not. The two classes of fish had no distinguishing characteristics by means of which the customs officials could determine the quantity or proportion of each. In holding that the importer should have segregated the two classes of fish under section 508 in order to prove two different classifications, the court stated as follows:

The section is very clear. It obviously presupposes that where the customs officials are able readily to ascertain and segregate portions of imported commingled goods for duty purposes they will do so, and certain of the decisions above cited are to the effect that when there is a failure on their part to do this in cases where they might readily have made the ascertainment, the importer may make protest and present proof upon the subject matter at the trial. When, however, such officials are unable readily to determine the proper segregation the burden is placed upon the importer to "segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.",

Under authority of the cases cited, *supra,* we think it is fairly evident that so-called Japanese wipers or wiping rags are not readily segregable by customs officers, but that they are capable of segregation by importers under said section 508.

On this point, counsel for the plaintiffs in their brief argue that while Department ruling, T. D. 46106–4, was in effect, no duty rested on the importers to segregate, and that said ruling was an official denial that such goods contained commingled merchandise, and that the

rags were not segregable. Also that it, in effect, prohibited free classification by collectors of customs of any portion of such importations as paper stock rags, and that compliance with section 508 therefore became useless and unnecessary.

In support of this contention our attention is drawn to the case of *United States* v. *Lee*, 106 U. S. 196, which was an action for ejectment. The property in question had been sold under a tax sale. The tax collectors had been following a practice condemned by the court as unlawful, in that they refused to receive taxes except in a certain specified manner, which excluded payment through an agent. On such finding of fact by a jury it was held that the tax sale conveyed no title even though the taxes had not been paid nor offered to be paid.

There is no evidence or showing in the present instance however, that the collector at the port of New York, or at any other port, would not recognize the right of the importers to make a segregation of the rags under said section 508 upon their request. The case of *United States* v. *Lee, supra,* therefore has no application herein, even though the said Treasury Department ruling, T. D. 46106–4, could be construed as instructions to collectors of customs not to recognize any such requests for segregation by importers, which, however, is not the case. In the first place, no Bureau of Customs or Treasury Department ruling in the form of a general regulation can lawfully nullify a positive provision of law, nor would it be binding on importers or this court, as already decided in the case of *United States* v. *Schapiro,* 24 C. C. P. A. 343, *supra,* which affirmed the decision of this court reported in T. D. 48305, *supra.*

As we read the full text of the Bureau of Customs circular letter' No. 942, on which T. D. 46106–4 was predicated, it is simply to the effect that in the opinion of the Bureau of Customs all "Japanese wipers" should be classified as cotton rags not chiefly used for paper making, dutiable at 3 cents per pound under said paragraph 922 of the act of 1930, and that therefore collectors of customs need not segregate same on their own volition; but that if an importer requests permission to segregate any importation of such cotton rags under the provisions of said section 508 he should be granted the privilege, in accordance with the procedure existing under the previous circular letter 896. It in no way attempts to deny such right of segregation to importers, and there was no justification on the part of the plaintiffs herein to assume that such right would be refused them by the collector of customs in the present instance, or that he would not carry out the duties imposed upon him by law.

Therefore, in the absence of any segregation, or request for segregation, by the plaintiffs under said section 508 of the Tariff Act of 1930, the collector properly assessed duty on the entire importation as cotton rags dutiable at 3 cents per pound under said paragraph 922

of said act. The protest of the plaintiffs claiming, among other things, that the importation is free of duty as paper stock under paragraph 1750, is therefore overruled *in toto*. Judgment will be rendered accordingly.