HERMAN WEBER *v.* UNITED STATES (No. 4015)[1]

United States Court of Customs and Patent Appeals, January 25, 1937

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellant.

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Marcus Higginbotham, Jr.*, special attorney, of counsel), for the United States.

[Oral argument December 9, 1936, by Mr. Sharretts and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellant imported at the port of New York several shipments of certain material which was classified for duty by the collector, in each instance, at 35 per centum ad valorem under paragraph 1537 (b) of the Tariff Act of 1930. The importer protested, claiming it to be dutiable in each instance at 25 per centum ad valorem under said paragraph 1537 (b) as manufactures of rubber, or at 10 or 20 per centum ad valorem under paragraph 1558 as nonenumerated unmanufactured or manufactured articles, respectively, or, alternatively, as free of duty under paragraph 1697, of said act. The material portions of the relevant paragraphs are as follows:

PAR. 1537. (b) Manufactures of india rubber * * * 25 per centum ad valorem; * * * manufactures composed wholly or in chief value of india rubber known as "hard rubber", not specially provided for, finished or unfinished, 35 per centum ad valorem.

<hr>

[1] T. D. 48803.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1697. India rubber and gutta-percha, crude, including jelutong or pontianak, guayule, gutta balata, and gutta siak, and scrap or refuse india rubber and gutta-percha fit only for remanufacture.

The imported material is a fine, flour-like brown material. It is commonly known as hard rubber dust. The record shows that hard rubber dust is prepared in several ways. First, it is made by pulverizing waste hard rubber material, such as broken telephone mouthpieces, rubber penholders, parts of battery boxes, and the like. In such cases, nothing is done except to powder the broken scrap materials.

Another method of preparation is from soft rubber materials, such as inner tubes, rubber bands, and the like. In this process, the soft rubber materials are ground up into as fine a condition as is possible, usually into a coarse-grained powder form. To this mass is added a vulcanizing agent and the whole mass is then subjected to heat in a vulcanizer, and thereafter may be rolled out into a sheet form. This rough, hard, vulcanized sheet is then ground into powder form, as near to the grade of fineness that is desired, as possible.

Another process of making it is by taking crude rubber and adding sawdust to it, with sulphur and some oil and other vulcanizing agents, and vulcanizing the whole. After this mass is vulcanized to the proper hardness, it is ground into dust and becomes hard rubber dust.

The witnesses were unable to tell just what method was employed in the production of the material imported here. It was stated that this could be told by a chemical analysis, but no witness was able to state the exact method.

It is shown by the record that this imported material is known to the trade as hard rubber dust, and is sold to manufacturers of hard rubber articles throughout the United States. It seems to be dealt in quite extensively and to be imported in the case at bar for purposes of sale and not for remanufacture, by the importers.

It is used principally as an adulterant in the making of hard rubber products. In so using it, crude rubber is used as a base. This crude rubber is first masticated, and to it hard rubber dust is added as an adulterant. Sulphur and sometimes a quantity of oil are added to this mixture, and the whole is then mixed into a dough-like mass. This dough-like mass is then molded into various articles, either into sheets or rods, tubes, rolls, or other articles. It is vulcanized while being molded, by heat. In this way it is possible to make panels, fountain pen cases, or whatever the particular article desired may be, of hard rubber. It appears, also, that occasionally hard rubber dust may be used without an admixture with any other substance. How-

ever, the testimony of the witness Thorp is to the effect that any such use thus far has been experimental only, and there seems to be no testimony to the contrary.

The contention of counsel for the Government is that the product has been properly classified and is "manufactures composed wholly or in chief value of india rubber known as 'hard rubber', not specially provided for."

The trial court was of the same opinion, expressing itself, in conclusion, as follows:

Grinding is certainly a manufacturing process, and while, as plaintiff states in his brief, it "does nothing more than fit the scrap for remanufacture", that fact does not remove this hard rubber dust from paragraph 1537 (b); for, it will be observed the wording is "*manufactures* composed wholly or in chief value of * * * 'hard rubber'." It is not *articles* "composed wholly or in chief value of * * * 'hard rubber'." This rubber dust is clearly a manufacture "composed wholly or in chief value of * * * 'hard rubber'," and is specifically provided for by the provision under which the collector classified it.

The appellant relies principally upon the free list provision contained in said paragraph 1697, and argues that the material imported here is simply scrap or refuse india rubber and gutta-percha *fit only for remanufacture*. It is not denied that grinding may sometimes be a process of manufacture, but here it is argued that such grinding as has been used upon the imported material simply fits it for transportation, and does not at all remove it from the provision "fit only for remanufacture." It is, according to the importer's argument, still scrap or refuse rubber and nothing else.

As an alternative argument, the importer alleges that the imported material is an unenumerated manufactured article or a manufacture of india rubber.

There was some attempt on the part of the importer to show a commercial designation of the imported material as scrap or refuse india rubber. However, counsel do not rely upon proof of commercial designation to establish their case. Irrespective of this, we are of opinion that the record fails to show any such commercial designation.

Primarily, the appellant insists that the imported material is "scrap or refuse india rubber * * * fit only for remanufacture," and hence covered by the free list provision within said paragraph 1697. Although powdered, it is claimed that it is still scrap or refuse rubber and nothing more. This argument is based upon the following authorities: *Cadwalader* v. *Jessup and Moore Paper Co.*, 149 U. S. 350; two decisions of the Board of General Appraisers, namely, T. D. 28360 and T. D. 29690, Abstract 21030, and, finally, *United States* v. *Michelin Tire Co.*, 1 Ct. Cust. Appls. 518, T. D. 31544, affirming T. D. 30339, Abstract 22658.

In the *Cadwalader* case, *supra*, old worn-out rubber shoes were imported. They were classified under the provision of schedule N

of section 2502 of the act of March 3, 1883, as "articles composed of india-rubber, not specially enumerated or provided for in this act." Under the free list, section 2503 of the same act, the following merchandise was exempt from duty: "India-rubber, crude and milk of." There was also a similitude clause in the act. The importer insisted that the imported articles were free, as being substantially crude rubber. The testimony showed that the only commercial use or value of the old india-rubber shoes was as a substitute for crude rubber. The court held, applying the similitude clause, that these old worn-out shoes were substantially the material called crude rubber, and that it should have been classified as old scrap or refuse india rubber which had been worn out by use and was fit only for remanufacture, and that the imported articles could no longer be considered as manufactures of rubber. It is further argued by counsel for appellant that while the *Cadwalader* case, *supra*, was pending before the Supreme Court, the Congress passed the act of October 1, 1890, and inserted a specific provision for "old scrap or refuse india-rubber which has been worn out by use and is fit only for remanufacture." From these circumstances it is argued that the scrap rubber from which hard rubber dust is produced cannot legally be considered as manufactures of rubber after the articles of which such hard rubber dust is composed have become scrapped, and the conclusion is insisted upon that hard rubber dust cannot be considered as a manufacture of hard rubber, because in the tariff sense it is not produced from hard rubber.

Following this argument, the decisions above cited of the Board of General Appraisers are commented upon.

In the first of these, T. D. 28360, old scrap or refuse india rubber which had been worn out by use, and had been assorted and ground for convenience in remanufacturing, was imported. The imported material was classified by the collector under the Tariff Act of July 24, 1897, paragraph 449, as manufactures of india rubber. The importer claimed it was free of duty as "old scrap or refuse india-rubber which has been worn out by use and is fit only for remanufacture." The testimony showed that the material had been assorted by hand, the foreign substances removed, and the rubber content then ground for convenience in transportation. The board held it to be free of duty under the free list provision above quoted.

In the second decision of the Board of General Appraisers, T. D. 29690, Abstract 21030, rubber scraps which had been reclaimed and recovered from old scrapped boots and shoes and automobile tires, and which had been ground, were held to be entitled to free entry under paragraph 579 of the said act of 1897.

In *United States* v. *Michelin Tire Co.*, *supra*, we had before us an importation of rubber material recovered from old rubber boots

shoes, bicycle tires, and the like. The stock had been carefully sorted and metal articles cut away and discarded. The material was then chopped into small particles by machinery, again carefully sorted, fed by hand into the machine, chopped again, and thereafter the chopped material was baled and stored for a period. It then went from the bales into a grinding department, where it was thrown into chutes, passed between certain crackers, and was cracked up into small pieces, then fed to other grinders and ground finer. At this stage, it still had particles of fabric in it, and was treated by a chemical solution for the purpose of removing these foreign particles. It was then discharged from the heaters into washers, where the dirt, sand, and particles of cloth and the chemical solution remaining were washed away. It was then riffled, crimped up over long rifflers to remove particles of sand or metal, then put into settling tanks, where the water was drained off, then into a machine where it was pressed, and then passed on to screens where it was dried. It was then taken into mills and sheeted. From this process it came out as a large slab and was then sent to the refiners where it was again sheeted into commercial sheets, as thin as could be made for the purpose of compression and for crushing the lumps. This court found that it was fit for all purposes for which india rubber was usable, and was sometimes used alone, but frequently, and usually, with crude rubber. It was also held that the imported material had not been converted into a manufacture of rubber, that the chopping, segregation and grinding, and the other processes, were only for the purpose of separating the rubber from the other component materials of the scrap or refuse, and recovering the rubber in a clean and pliable condition, "eliminating therefrom all other parts of the scrap and adhering foreign matter." We said, in part:

The subsequent operations, even if we include the refining, which is not applied to the imported article, are applied not for the purpose of putting the material on its course of manufacture toward some ultimate article into which it is to be subsequently made, but are solely and only for the purpose of recovering and assembling it, as all rubber is assembled, into a form suitable for transportation and marketing. It has not been entered to any degree upon its course as any certain manufactured article, but is a raw material suitable for use in the manufacture of innumerable articles. Nor is it a manufactured material, but rather "demanufactured," if the term may be used, and recovered and restored so far as can be to its original condition as a single material.

In these cited cases, one fact is evident, that the material which started as scrap and refuse rubber was, in the end, rubber adapted to the same uses as the original material of which it was composed. If it had been separated, cleaned, and ground, it was for the purpose of "getting the rubber by itself," or, to use an old phrase, it fitted it for transportation or marketing, and fitted the material for no other uses

than those to which it was naturally adapted. It started as scrap rubber and it ended as scrap rubber.

However, we have a different situation here. There is not a word in the record to indicate that this material was ground for any purpose of transportation or marketing. The record does not show whether the material was composed of crude rubber or scrap soft rubber or scrap hard rubber. So far as the record shows, it may have been of parts of all. If it was composed of hard rubber scrap, it had been ground only. If of soft rubber scrap, this soft rubber had been ground, vulcanized, changed into a hard rubber cake, and then ground. If it was of crude rubber it had gone through a similar process, so that, in the end, whatever the material of which it was composed might have been, it was converted into a material which may have been entirely different from the original product from which it was made. It needs no argument to convince the mind that crude rubber or soft rubber scrap might have been fitted for an entirely different use than for the remanufacture of hard rubber articles. The product which was produced had a new name and was no longer scrap rubber. It was hard rubber dust, a distinct article of commerce.

The case, to our minds, bears much analogy to the case of *United States* v. *Swift & Co.*, 14 Ct. Cust. Appls. 222, T. D. 41407. In that case, ground tankage was imported under the Tariff Act of 1922, and was classified as a nonenumerated manufactured article under paragraph 1459 of that act. It was claimed to be free of duty under paragraph 1583 of the same act, or dutiable as waste under paragraph 1457, or at 10 per centum ad valorem as a nonenumerated unmanufactured article under said paragraph 1459. The free list provision, paragraph 1583, provided for "Guano, basic slag, ground or unground, manures, and all other substances used chiefly for fertilizer." The tankage, composed of inedible products of slaughtered animals, had been dried and ground to meal, and was unfit for feed in its imported condition. This court held that the merchandise had been processed by being ground into meal form and had been advanced in condition for its ultimate use as feed; that it had been partly manufactured, and that it should be classified, not as free of duty, but as merchandise manufactured in whole or in part.

Having arrived at the conclusion that the material here involved is not shown to be entitled to free entry as scrap or refuse india rubber fit only for remanufacture, the next inquiry must be, how shall it be classified?

The collector has returned the merchandise as "manufactures of hard rubber, not specially provided for." One of the burdens rest-

ing upon the importer was to prove that the classification by the collector was wrong. As we have noted, there is no proof in the record as to the kind of material of which the imported product is composed. Hence, the importer has failed to make his case, for he has failed to prove that the imported product is not a manufacture of hard rubber.

This being the state of the record, it follows that the collector's assessment must stand, without an expression on the part of the court as to its correctness.

The judgment of the United States Customs Court is *affirmed.*

### DISSENTING OPINION

BLAND, Judge: I think the merchandise should be classified as a nonenumerated manufactured article. It is either hard or soft rubber scrap which has been manufactured, but not manufactured into such an article as is provided for in paragraph 1537 (b). It is a material for future manufacture into a finished article. I distinguish between a manufactured material and a manufactured article. See *Tide Water Oil Co.* v. *United States,* 171 U. S. 210.

Hard rubber, in the form of plates or bars which are materials only, is not provided for in the paragraph, much less is the dust here under consideration.