(C. D. 566)

SUPREME TIRE & RUBBER CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 10, 1941)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

Before OLIVER and WALKER, Judges

WALKER, Judge: These are suits against the United States for the recovery of money claimed to have been illegally exacted as customs duties on shipments of used automobile tires imported from England. They were classified by the collector of customs as "automobile * * * tires composed wholly or in chief value of rubber" and were assessed with duty at the rate of 10 per centum ad valorem under the provision in paragraph 1537 (b) of the Tariff Act of 1930 therefor. Alternative claims are made in the protests, the primary claim being that the tires are entitled to free entry under the provision in paragraph 1697 of the same act for "scrap or refuse india rubber * * * fit only for remanufacture," and the secondary claim being for duty at the rate of 7½ per centum ad valorem under the provision in paragraph 1555 of the same act as amended by the British Trade Agreement reported in T. D. 49753 for "waste not specially provided for."

Counsel for the plaintiff in his opening statement outlined the issue to be presented for consideration in the following language:

We claim that the imported merchandise should no longer be classified as rubber automobile tires, because it has been used, and it is no longer suitable for use as tires.

Plaintiff called two witnesses in support of the claims made. The first of these was Max Stein, owner of the plaintiff company, who described his work there as buying, selling, and examining tires for the company which, he said, was in the business of buying scrap rubber, tires, and tubes, and also doing retreading and vulcanizing. The witness testified that he purchased hundreds of thousands of tires a year, and that such purchases were made from coast to coast.

As to the condition of the imported merchandise, the witness testified:

Q. What was the condition of the merchandise as imported? What did it look like?—A. They were in use as tires before. There was evidence that they showed breaker-strips between the rubber and the cord. They were in use as tires, and after the rubber was worn off the tread, they were fit for manufacturing purposes only, or if the tires had a break or puncture hole, then we salvaged whatever we could, and vulcanized them.

Q. What do you mean by the term "breaker-strip"?—A. The term "breaker-strip" shows the tire becomes useless as a tire unless it is used for manufacturing purposes.

Q. Where is the breaker-strip on the tire?—A. On the tread.

Q. It is on the tread just under the rubber, and just over the cord?—A. Yes. (R. p. 6)

With respect to the use of tires such as those in issue after importation the witness testified:

When we buy tires and tubes, we buy them as scrap. After we get them into our place, then we salvage whatever we can that are fit for retreading and vulcanizing, and what we have no further use for, we sell them to a jobber, and it is used for reclaiming purposes.

Q. Reclaiming the rubber in the tire?—A. Yes.

 \* \* \* \* \* \* \*

Q. What do you do in the process of retreading and vulcanizing?—A. A tire that is fit to be retreaded, we take the rubber off, we cement it, and after cementing it we put a new coat of rubber on it, and it is put into a mold. When a tire is just injured in one place, and if it has sufficient tread, why we vulcanize it.

Q. Do you put another tread on the tire?—A. Yes, sir.

Q. Do you ever sell or use any of the imported merchandise, in its condition as imported, for use as tires on automobiles?—A. No, sir.

On cross-examination the witness testified that the merchandise in issue had been bought by the unit; that the quotations on rubber scrap in two waste trade papers were given in pounds; that tires that were capable of being retreaded or vulcanized were sold by the unit while those not capable of being so used were sold by the pound.

The witness' partner, Maurice P. Jones, purchased the merchandise in issue in England, and as to such purchases Mr. Stein testified as follows:

X Q. And tires which are bought by you, and which can be used, are bought by the unit?—A. The tires Mr. Jones buys in England, he would go to the man and buy an entire lot for so much, and sort them out, and only pick the reusable.

X Q. Took the usable tires and sent them over here, and divided them into units of so many tires?—A. That is right.

X Q. The others he sold as scrap rubber in England by the pound?—A. That is right.

X Q. All these importations were invoiced by you, or by your partner, as old rubber tires?—A. That is right.

On being called to the stand to testify, Mr. Jones stated he was manager of the plaintiff company; that he had bought and sold merchandise similar and identical with that in issue in this country for the past 30 years in quantities of 75,000 to 100,000 tires a year, or

more, under the designation of "scrap *tires*." He then testified as follows:

Q. Does scrap tires come under the heading of scrap rubber?—A. No, it does not. Scrap rubber means all kinds of rubber, rubber hose, boots, and shoes. When we go out to buy, we buy scrap *tires* only.

Q. Scrap rubber includes scrap tires?—A. No, it does not, not in the way of purchasing.

Q. The tires you imported are not scrap rubber?—A. Yes, they are.

Q. Will you explain that please?—A. Scrap rubber has a different price, of what kind of scrap rubber it is. *Scrap tires have a certain value, whereas hose probably has hardly any value, so you can't use scrap rubber and tires as the same thing.* [Italics added]

Q. Scrap rubber is the general heading, and under that general heading you use different kinds of scrap, such as scrap tires? Is that what you meant a moment ago?—A. Yes.

To overcome the presumption in favor of the collector's classification and to shift the burden of going forward with the evidence it is necessary that some logical, intelligent proof be interposed tending to establish (1) that the articles in issue are not "automobile * * * tires composed wholly or in chief value of rubber" and (2) that they are "scrap or refuse india rubber * * * fit only for remanufacture."

With respect to point (1) we think the record amply demonstrates that the articles in issue as imported were in fact automobile tires, and it has not been disproved that they were in chief value of rubber. It is clear from the record that the articles as imported were fit not only for the purpose of remanufacture as a rubber material but also for repair, by retreading or vulcanization, as rubber automobile tires. Their identity as tires never was lost and their commercial use and value lay not merely in the rubber that might be reclaimed from them but in the fact that they might be the foundation upon which a new tread might be built, or the existing tread vulcanized, in either case so that the original tire might be used again and serve the same purposes for which it was originally made. It may be true that they might not be lawfully used as tires in certain states in the condition as imported by reason of the fact that they would be a source of danger on the highway, but the fact remains that whether good, bad, or indifferent they were automobile tires, having a definite value as such.

In this connection we may also consider the invoice description of the merchandise, admittedly made by a partner of the importing firm, as "old rubber tires." As stated by the Court of Customs and Patent Appeals in *United States* v. *Rockhill & Vietor et al.,* 10 Ct. Cust. Appls. 112, T. D. 38374, at 116,

* * * It is true that the invoice descriptions of merchandise are generally, perhaps always, open to explanation and contradiction, both by the Government and the importers; nevertheless, a statement against interest made by importers in their invoices and entries certainly establishes a *prima facie* case against any contradictory claim made by them in their protest. * * *

We note also that the manner of invoicing bears out the conclusion that the articles are tires. In many cases the invoices refer merely to so many "Old Rubber Tires" or "Old Rubber Tyres," while in other cases specific sizes of the tires are given. These statements, to our minds, are admissions made *ante litam motam* by the importers that the merchandise was something more than scrap rubber and in fact still retained its identity as tires.

With respect to point (2) we think the facts brought out at the trial preclude classification of the merchandise as "scrap or refuse rubber * * * fit only for remanufacture." To begin with, no effort was made to prove that the rubber in issue is refuse rubber, plaintiff's effort being confined to showing that the merchandise was scrap rubber. In *United States* v. *Michelin Tire Co.*, 1 Ct. Cust. Appls. 518, T. D. 31544, the court had before it for construction paragraph 579 of the Tariff Act of 1897, the pertinent portion of which reads as follows:

* * * old scrap or refuse india rubber which has been worn out by use and is fit only for remanufacture.

In construing the foregoing provision the court said (p. 524):

* * * The actual thing made free by this provision seems to have been lost sight of. It is a provision enacted solely for the purpose of permitting free entry of india rubber as and when a manufacturing material. If we constantly bear this thought in mind, it seems to us many of the difficulties of construction will be avoided. *The Congress having in mind rubber only*, and that the source of much of this rubber in condition as found was old shoes, tires, hose, and other similar sources, which were apparently "articles" or "manufactures" dutiable under other specific provisions of the tariff law, *confined its language in paragraph 579 so as to embrace only the rubber contained in these old articles.* It is not old rubber shoes or old rubber tires or old rubber hose that are made free; but it is the old scrap or refuse rubber found in these things * * *. [Italics added]

In the course of its opinion the court had occasion to refer to the case of *Cadwalader* v. *Jessup & Moore Paper Co.*, 149 U. S. 350, from which it quoted the following:

The uncontradicted testimony is to the effect that the only commercial use or value of the old india-rubber shoes, or scrap rubber, or rubber scrap in question, is by reason of the india-rubber contained therein as a substitute for crude rubber; that the old shoes were of commercial use and value only by reason of the india rubber they contained, as a substitute for crude rubber, and not by reason of any preparation or manufacture which they had undergone; that they could not fairly be called "articles composed of india-rubber," and as such dutiable * * *; and that, although the shoes may have been originally manufactured articles composed of india-rubber, they had lost their commercial value as such articles, and substantially were merely the material called "crude rubber." They were not india-rubber fabrics, or india-rubber shoes, because they had lost substantially their commercial value as such.

The Supreme Court, in the foregoing case, held that—

The proper description of the importation in question in this case is that it is "old scrap or refuse india-rubber, which has been worn out by use and is fit only for remanufacture."

We think the foregoing excerpts show clearly that scrap rubber fit only for remanufacture within the meaning of the term as used in the tariff acts is limited to rubber which has lost its commercial use and value as the article which it was originally made to be and which has commercial use and value only by reason of the rubber contained therein.

We are therefore satisfied that the merchandise in issue is not properly classifiable as scrap rubber, as claimed by the plaintiff, and we are likewise satisfied that the secondary claim for classification as waste, not specially provided for, under paragraph 1555, is not well founded. In *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, T. D. 41644, at page 115 it was said:

In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and *fit only for remanufacture into something else.* It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. [Italics added.]

The only subdivision of the foregoing definition of the term "waste" into which the articles at bar, by any stretch, might possibly fall is that contained in the first sentence. As has been noted, the tires in question were not, at the time of importation, "fit only for remanufacture into something else," but were fit to be repaired to be used again for their original purpose.

In conclusion we might add that in our view retreading or vulcanization of tires are analogous to the resoling or patching of worn shoes, and amount only to repair operations.

For the foregoing reasons the protests are overruled, and judgment will issue accordingly.