UNITED STATES *v.* F. LESTER KITTLE, INC., ET AL. (No. 4452) [1]

United States Court of Customs and Patent Appeals, April 4, 1944

*Paul P. Rao,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellee.

[Oral argument February 1, 1944, by Mr. Donohue and Mr. Edward P. Sharretts]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

Classification of the merchandise involved herein was challenged in the United States Customs Court by protests of appellee, F. Lester Kittle, Inc., and two other plaintiffs, claiming that the merchandise described in the protests as "sole crepe rubber" was not dutiable, as held by the collector, at 20 per centum ad valorem under the provisions of paragraph 1558 of the Tariff Act of 1930 but was entitled to free entry as crude rubber under paragraph 1697 of the said act. The paragraphs read as follows:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10

[1] C. A. D. 276

per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1697. India rubber and gutta-percha, crude, including jelutong or pontianak, guayule, gutta balata, and gutta siak, and scrap or refuse india rubber and gutta-percha fit only for remanufacture.

The issue was tried before the Third Division of the court in the city of New York. Plaintiffs took testimony and by stipulation it was agreed that the four involved protests should be consolidated for trial and that official samples of the merchandise and many illustrative exhibits should be received in evidence. No witnesses were called by the Government. The case was thus submitted and thereafter the court, after due deliberation, rendered its judgment sustaining the protests, from which judgment this appeal was taken.

The record presents a complete history of the production of rubber from its primitive beginning to the present day. We do not deem it of importance to set out here all of that history, for the reason that we think it is generally known that rubber is produced from rubber latex, a milky fluid drawn from many species of trees and plants.

Latex when allowed to stand will naturally coagulate, but coagulation may be accelerated and made uniform by certain treatment.

In the early days of rubber production, the untutored natives of districts in Mexico and South America, where rubber trees growing wild were plentiful, dipped a stick into the liquid latex and held it in the smoke of a fire made of burning palm nuts, which coagulated the latex. Then the stick was again dipped into the latex and again placed in the smoke. This process was repeated until a large mass of rubber was on the stick. It was then withdrawn and the cured rubber was ready for the market.

Subsequent to those days the rubber-producing industry was developed into a highly advanced state in the East Indies where, instead of depending upon the latex taken from trees growing wild great plantations were developed and almost all the rubber of commerce was there produced.

In the modern process when the latex is collected it is brought to factories for processing. It is coagulated into a thick dough-like mass which is run through rollers until it is thin enough to dry uniformly. Prior to running it through the rollers determination is made as to whether the product shall be dark or pale rubber. The thin sheets which are to be made into dark rubber are hung in a smokehouse for about 14 days, and are thereafter ready for commercial purposes. It may be in the form of sheets or a mass where the sheets are stuck together.

When it is desired to have the rubber retain its pale color the dough-like mass is put into a vat and bleached with sodium bisulphite. It is thereafter put through rollers until it is in very thin sheets, called "crepe rubber," and is then hung up to dry. At a certain stage of

drying, the thin sheets are laid one upon the other and, because of the condition of the rubber at that time, they stick together. If it is intended to be shipped in mass form the sheets are laid on each other until a mass is produced. By reason of its weight the sheets, while discernible, are all stuck together, and when used it is necessary to first grind up the mass. Such grinding appears to take from the rubber some of the "nerve" or resiliency, which is renewed by a vulcanizing process. The thin sheets may be imported as such or laid on top of one another to attain a desired thickness to fill "a manufacturer's demand." When the layers have been superimposed to a desired thickness they may be rolled under such pressure that the sheets are no longer discernible, which is the condition of the involved merchandise, which as imported is in lengths of from 16 to 18 feet and in thickness from $\frac{1}{16}$ to $\frac{1}{2}$ inch. The thickness is predetermined and uniform, and is for the purpose of making an article of a given thickness.

It appears that the imported goods are exactly of the same composition as the thin sheets from which they are made, and it also appears that so-called crepe rubber soles are stamped therefrom for use on footwear. While the imported merchandise is suitable for stamping out crepe rubber soles it is not dedicated to that use in the sense that it is unsuitable for other manufactures. As an instance of this, one of the witnesses stated "This Exhibit 2 could be used to make the babies' nipples, or the girdles, or the shower curtains, or any of the other products, and are used."

Sole crepe rubber sheets such as those here involved were first put on the market about twenty years ago, and until January 1940 the merchandise was classified as crude rubber. At that time by a decision of the Commissioner of Customs, T. D. 50020, the collectors and others concerned were directed to classify all crepe sole rubber prepared to a definite thickness as a single sheet or by lamination of several thin sheets in form ready to be cut into soles for shoes as dutiable at the rate of 20 per centum ad valorem under paragraph 1558.

There is nothing in the imported merchandise but crude rubber and whether it is smoked or not it is as crude as any other crude rubber, and obviously would serve as a crude material for a greater variety of manufactured articles than even the smoked rubber. The smoked variety cannot be used when it is desired to have the product a white or transparent article.

Appellant contends that the imported goods are manufactured articles made from bulk crepe rubber and specifically dedicated to use in the manufacture of crepe rubber soles. In our opinion the goods are not manufactured articles. It is true that they are made by laminating several very thin sheets of rubber and are then rolled under such pressure as to lose all layer identification, but nevertheless after

having been so laminated and rolled they still remain as crude as the thin sheets from which they are made. The only difference is that they are thicker. The fact that the merchandise is made to predetermined thickness does not of itself change its character. It is true that the principal or chief use is for the manufacture of soles for shoes, but the merchandise is likewise suitable for other uses and, as has been herein mentioned, is actually used in the manufacture of other articles. In our opinion the imported sheets are material from which shoe soles and other articles are made.

All rubber has always been produced in thin layers, whether those layers were formed around the stick of a savage or made on the plantations as hereinbefore described. When it is to be made for a purpose other than that for which a single very thin sheet is suitable the sheets are stuck together, or laminated.

Appellant admits in its brief that the imported articles have all of the physical and chemical characteristics of crude rubber and can serve every purpose of crude rubber, but contends that, because crude rubber in different form than that of the involved merchandise cannot be stamped into soles, it is the form of the imported merchandise which distinguishes it from crude rubber, citing as an example that it is only the form of planed or finished wood which warrants its classification as a beam and distinguishes it from logs or crudely hewn timbers. We do not think that comparison fits the present facts. The involved merchandise despite its form is nothing more than crude rubber, whereas the beam of wood has lost the crude character of the timber from which it was made.

Appellant in its brief argues that the decision in the case of *United States* v. *Wilkinson Process Rubber Sales Corp.*, 22 C. C. P. A. (Customs) 60, T. D. 47051, might well be considered dispositive of the issue here for the reason that the principle upon which the decision there rests is applicable in all respects to the case at bar.

The merchandise in that case consisted of rubber in rolls usually 50 feet long and 4 feet wide, having a thickness of from 1/24 to 3/4 of an inch and known as "linatex." It was classified as a manufacture of india rubber under paragraph 1537 (b) of the Tariff Act of 1930 and claimed to be free of duty under paragraph 1697 as india rubber, crude, or alternatively under paragraph 1558 as a nonenumerated article manufactured in whole or in part. The United States Customs Court held the merchandise to be properly dutiable under the latter claim. On appeal this court stated that the imported merchandise was not the same as "plantation crepe," which is made by laminating a sufficient number of layers of ordinary plantation crepe together so as to form sheets of material suitable for use as shoe soles. Therefore the involved material there was expressly held to be not the same as the kind of merchandise involved here. Furthermore, in that case

the merchandise was shown to have been produced from latex by means of a new and patented process and that when subjected to the solvent test for crude rubber, which consists in dissolving it in benzene, the imported merchandise did not dissolve, which indicated that the rubber was not crude. Obviously in the instant case the imported merchandise can be dissolved in benzene. This court sustained the judgment of the trial court for the reason that apparently the imported merchandise had many if not all the characteristics of vulcanized rubber but that since it was still a material suitable only for use in manufacturing articles which themselves would be manufactures of rubber it was dutiable as a nonenumerated article manufactured in whole or in part.

Appellant argues in its brief that while the merchandise in the *Wilkinson* case, *supra*, was treated in a different manner from the lamination process employed in producing the involved merchandise it was not the manner in which the merchandise was treated in the *Wilkinson* case but rather the result of that process, which is that the imported sheets possess many if not all the characteristics of vulcanized rubber, which was the reason for its classification. The vulcanization of rubber, as we understand it, is done for the purpose of restoring to rubber the "nerve," resiliency and tensile strength that is lost from the crude rubber by reason of machine processes. Therefore it does not matter that the imported goods possess any of the characteristics of vulcanized rubber.

In that case, as here, the Government cited the decision in *Tide Water Oil Co.* v. *United States*, 171 U. S. 210, as supporting authority. There the importation consisted of boards sawed and bound together in bundles called "shooks," which were ready to be made up into boxes in this country. The only operations required to form the shooks into boxes were to nail them together and to trim the edges. Drawback was claimed by the importer on the theory that the boxes had been wholly manufactured in the United States from imported material. The decision there was that they had not been wholly manufactured in any one country and therefore the terms of the statute were not complied with. The court in that case defined the meaning of the word "manufacture" and there is no doubt but that its statements as applied to raw materials and the applicable statute then being considered are settled law. The court there stated "Ordinarily, the article so manufactured takes a different form, or at least subserves a different purpose from the original materials; * * *." While the imported goods in the instant case differ in form merely in that they are thicker than the thin sheets, they do not serve any different purpose from that of crude rubber.

We do not deem it necessary to discuss the other cases cited by appellant.

It is conceded by appellant in its brief that it was the legislative intent to admit free of duty under paragraph 1697 all forms of crude rubber. India rubber, crude, appeared for the first time on the free list of the tariff act of July 14, 1870, 16 Stat. L. 256, 267, and has continued to be free of duty in all of the tariff acts enacted since then.

The trial court in its decision cited the case of *Lunham & Moore* v. *United States*, 31 Treas. Dec. 386, T. D. 36787, as pertinent. In that case rubber sheets similar in material respects to the merchandise at bar were held free of duty as india rubber, crude, under the tariff act of October 3, 1913. The merchandise there consisted of sheets of plantation rubber especially prepared for the manufacture of ponchos. It had been assessed for duty as an unenumerated manufactured crude article under paragraph 385 of that act and was claimed to be free of duty as india rubber, crude, under paragraph 513. There, as here, the merchandise had been held to be free of duty until that importation was received, when under instructions from the Treasury Department, T. D. 34897, the classification was changed from that of india rubber, crude, to that of an unenumerated manufactured article. The reason for the assessment of duty on the merchandise in that case as a manufactured article seems to have been that it contained foreign substances; namely, talc and shellac, but the Board of General Appraisers (now the United States Customs Court) was of opinion that the presence of those substances would not constitute the imported goods a manufactured article even without explanation.

This court in the case of *United States* v. *Michelin Tire Co.*, 1 Ct. Cust. Appls. 518, T. D. 31544, 20 Treas. Dec. 864, held that india rubber reclaimed from scrap or refuse under paragraph 579 of the tariff act of July 24, 1897, was india rubber, crude, and stated that "The manifest purpose of Congress, in paragraph 579, was to put on the free list all india rubber, whatever its source or condition, which was imported to be used as a material in the manufacture of india-rubber articles."

In the summary of Tariff Information, 1920, at page 687, the decision of the Board of General Appraisers in the case of *Lunham & Moore* v. *United States, supra*, was before the Congress, and no change with respect to india rubber, crude, was made in the subsequent tariff act. By reenactment of the provision for india rubber, crude, in the free list of subsequent tariff acts it must be presumed that the Congress gave legislative approval to the court decisions in the *Lunham & Moore* and the *Michelin Tire Co.* cases, both *supra*.

There can be no doubt that the imported merchandise here involved is crude rubber and was imported for use as a material in the manufacture of india-rubber articles such as soles and other rubber articles.

For the reasons hereinbefore stated the judgment of the United States Customs Court is *affirmed*.